IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERESA ANN CARMODY, | : | |
| | : | |
| Plaintiff, | : | No. 4:05-CV-1645 |
| | : | |
| v. | : | (Judge McClure) |
| | : | |
| THE PENNSYLVANIA STATE | : | |
| UNIVERSITY, | : | |
| | : | |
| Defendant. | : | |

## M E M O R A N D U M

April 9, 2007

### BACKGROUND:

On August 12, 2005, plaintiff Teresa Ann Carmody instituted this civil action against defendant, the Pennsylvania State University.  In her amended complaint, plaintiff alleges that defendant retaliated against her for filing a previous lawsuit in violation of Title VII of Civil Rights Act of 1964 and the Pennsylvania Human Relations Act.  Specifically, plaintiff alleges that she was terminated from her position with defendant and then not hired for multiple positions with defendant because of the previous lawsuit.

The parties have completed discovery.  On January 16, 2007, defendant filed

1

a motion for summary judgment.  (Rec. Doc. No. 19.)  Opposing and reply briefs have been filed and the matter is now ripe for disposition.  Now, for the following reasons, we will grant defendant's motion.

**STATEMENT OF FACTS:**

Plaintiff Teresa Ann Carmody obtained a B.S. in Engineering Science and Mechanics in 1995 and an M.S. in Engineering Science in 1997 both from the Pennsylvania State University ("University").  (Def.'s Statement of Facts, Rec. Doc. No. 19, ¶ 1.)  Thereafter she was employed at a lab in the University's College of Engineering from July of 1997 through June 30, 1999.  (Id. ¶ 2.)  This employment ended when her one-year contract was not renewed.  (Id. ¶ 3.)

Thereafter, she obtained a position with the University's College of Earth and Mineral Sciences ("EMS") beginning on July 1, 1999.  (Id. ¶ 4.)  On February 22, 2000, plaintiff filed a pregnancy discrimination complaint with the Equal Employment Opportunity Commission based on the non-renewal of her employment contract with the College of Engineering.  (Id. ¶ 12.)  Then, on October 30, 2001, plaintiff filed a lawsuit in the United States District Court for the Middle District of Pennsylvania alleging the discrimination.  (Id. ¶ 14.)  This case was eventually settled in October, 2002.  (Id. ¶ 15.)

Plaintiff remained employed with EMS from July 1, 1999 until June 30, 2003.  (Id. ¶ 4.)  At the beginning of this time period, plaintiff worked ten hours per week as a safety officer and performed other assignments which made her employment full-time.  (Id. ¶ 88-89.)   On May 6, 2002, plaintiff received notice that her contract would be renewed only from July 1, 2002 until September 30, 2002, rather than the typical year it was normally renewed.  (Rec. Doc. No. 30, ¶ 9.)  In October, 2002, plaintiff began to perform only the safety officer part-time position.  (Rec. Doc. No. 19, ¶ 90.)  Finally, on June 30, 2003, her employment as safety officer was terminated.

Defendant alleges that the reason that plaintiff's employment was reduced to only the safety officer position was because plaintiff's other assignments either lost funding or had been completed.  (Id. ¶ 90.)  Furthermore, it alleges that it terminated plaintiff's employment as safety officer because the defendant decided it was not advisable for the safety officer's duties to be held by an individual who was not a full-time employee of EMS after an accident occurred when plaintiff was not working.  (Id. ¶¶ 91-92.)

Plaintiff, on the other hand, disputes that plaintiff's other assignments were terminated because of lost funding or completion.  Specifically, plaintiff alleges that funding continued to exist because the defendant hired another individual to

work in the same lab where plaintiff had been working.  (Pl.'s Response to Def.'s Statement of Facts, Rec. Doc. 29, ¶ 90.)  Additionally, as to defendant's allegation that plaintiff's employment as a safety officer was terminated because she was not a full-time employee, plaintiff alleges that there was no requirement that the safety officer serve as an emergency responder or be on-call at all times. (Id. ¶ 91.) Instead, the safety officer receives reports of accidents or incidents and then investigates them.  (Id. ¶ 92.)

The record also indicates that following plaintiff's lawsuit, defendant failed to hire plaintiff for thirty-two different positions throughout the University to which she applied.  (Def.'s Statement of Facts, Rec. Doc. No. 19, ¶ 19-22.)  Yet, in the plaintiff's opposition to defendant's motion for summary judgment, plaintiff only alleges that fourteen of these positions are at issue.  (Rec. Doc. No. 31, at 3.) Therefore, it appears that plaintiff has abandoned her challenges as to the other positions and we will only address the fourteen positions at issue.  Each of these positions is labeled as a number from one to thirty-two.[1]

Defendant alleges that it has been unable to identify Position Nos. 1, 5, and 11 based on the information provided by the plaintiff.  (Rec. Doc. No. 19, ¶¶ 26,

---

[1]Evidently, the labeling of the positions occurred prior to the narrowing of the number of positions at issue.  This is the reason the labels run from one to thirty-two rather than one to fourteen.

33, 45.)  As to Position No. 1, plaintiff alleges that she applied for the position on

December 9, 2002 and she points to a confirmation email received by plaintiff after

the application was submitted.  (Rec. Doc. No. 29, ¶¶ 23, 26.)  As to Position Nos.

5, plaintiff alleges that she applied on December 27, 2002 and although she does

not have a confirmation email, she nevertheless remembers applying for the

position.  (Id. ¶¶ 23, 33.)  Finally, as to Position No. 11, plaintiff alleges that she

applied on February 24, 2003.  (Id. ¶ 23.)  Again, she does not have a confirmation

email but she remembers applying for the position.  (Id. ¶ 45.)

Defendant alleges that as to Position No. 13, its records indicate that the job

posting does not exist.  (Rec. Doc. No. 19, ¶ 47.)  Plaintiff nevertheless alleges that

she applied for the position on March 14, 2002.  (Rec. Doc. No. 29, ¶¶ 23, 47.)

Defendant alleges that Position Nos. 2, 22, 29, and 31 were withdrawn prior

to being filled.  (Rec. Doc. No. 19, ¶¶ 27, 65, 78, 80.)  Plaintiff does not dispute

that this is the case, but simply states that no reason was given for the withdrawal.

(Rec. Doc. No. 29, ¶¶ 27, 65, 78, 80.)

Defendant alleges that as to Position Nos. 6, 15, 21, and 25, the decision not

to hire plaintiff was made by a single decisionmaker and that the decisionmaker in

each instance was unaware of plaintiff's previous lawsuit.  (Rec. Doc. No. 19, ¶¶

34, 49, 64, 71.)  As to each of these positions, defendant cites to an affidavit from

the decisionmaker.  (Id.)  Plaintiff does not dispute the validity or truth of these affidavits.  (Rec. Doc. No. 29, ¶¶ 34, 49, 64, 71.)

Defendant alleges that as to Position No. 16, the decision not to hire plaintiff was made by a selection committee.  (Rec. Doc. No. 19, ¶ 50.)  It alleges that the chair of the committee was not aware of plaintiff's previous lawsuit and cites to an affidavit from that individual.  (Id. ¶ 51.)  Furthermore, the affidavit of the chair of the committee states that none of the individuals on the selection committee ever mentioned the previous lawsuit when hiring discussions took place.  (Id. ¶ 52.)  Plaintiff does not dispute this evidence.

Finally, defendant alleges that Position No. 20 was withdrawn and then later reposted as Position No. 26.  (Id. ¶ 63.)  Then, the decisionmaker for Position No. 26 was unaware of plaintiff's previous lawsuit.  (Id. ¶ 72.)  Plaintiff, on the other hand alleges she applied for Position No. 20 on April 2, 2003, had an interview on April 12, 2003, and then received an email on May 2, 2003 stating that another individual had been hired.  (Rec. Doc. No. 29, ¶ 63, 72.)  Furthermore, this email predated the date that the defendant alleges the withdrawal and reposting took place.  (Id.)


**DISCUSSION:**

6

## I.  Legal Standard

A district court may properly grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those which might affect the outcome of the suit.  Id.; Justofin v. Metropolitan Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004).

Regardless of who bears the burden of persuasion at trial, the party moving for summary judgment has the burden to show an absence of genuine issues of material fact.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996) (citations omitted).  To meet this burden when the moving party does not bear the burden of persuasion at trial, the moving party must show that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'"  Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir. 1989) (quoting Chippolini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d. Cir. 1987)); see Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986).  More simply put, a party moving for summary judgment who does not

bear the burden of persuasion at trial is not required to negate the nonmovant's

claim, but only point out a lack of evidence sufficient to support the nonmovant's

claim.  Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930

F.2d 1056, 1061 (3d Cir. 1991).

To the contrary, when the moving party bears the burden of persuasion at

trial, it must point to evidence in the record that supports its version of all material

facts and demonstrate an absence of material facts.  National State Bank v. Federal

Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992).  If the moving party does not

meet this burden, the court must deny summary judgment even if the nonmoving

party does not produce any opposing evidence.  Id.

Once the moving party meets its burden of showing an absence of genuine

issues of material fact, the nonmoving party must provide some evidence that a

issue of material fact remains.  Matushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986).  The nonmoving party, however, cannot do so by merely

offering general denials, vague allegations, or conclusory statements; rather the

party must point to specific evidence in the record that creates a genuine issue as to

a material fact.  Celotex, 477 U.S. at 32; Ridgewood Bd. of Educ. v. N.E. ex rel.

M.E., 172 F.3d 238, 252 (3d Cir. 1999).

## II. Analysis

Plaintiff has brought claims of retaliation under federal law set out in Title VII of Civil Rights Act of 1964 and under state law set out in the Pennsylvania Human Relations Act.  Specifically, plaintiff alleges that she was terminated from her position with defendant and then not hired for multiple positions with defendant because she had filed a previous lawsuit.

Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).  Furthermore, its anti-retaliation provision forbids discrimination against an employee or job applicant who has made a charge in a Title VII proceeding.  Id. § 2000e-3(a).  In order to establish a prima facie case of retaliation, a plaintiff must demonstrate that:  (1) the employee engaged in a protected employee activity; (2) the employer took adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000) (citations omitted).  The Pennsylvania Human Relations Act (PHRA) contains a nearly identical anti-retaliation provision and federal courts have construed this provision to require the same elements to be proved as a Title VII retaliation claim.  Fogleman v. Mercy Hosp., Inc., 283 F.3d

9

561, 567 (3d Cir. 2002).

If a plaintiff is able to make a prima facie showing of all three elements of a prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its conduct. Quiroga v. Hasbro, Inc., 934 F.2d 497, 501 (3d Cir. 1991) (citing Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Then, if the employer does so, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for retaliation. Waddell v. Small Tube Prods., Inc., 799 F.2d 69, 73 (3d Cir.1986).

To obtain summary judgment, an employer must show that a rational trier of fact could not conclude as a matter of law (1) that retaliatory animus played a role in the employer's decisionmaking process and (2) that it had a determinative effect on the outcome of the process. Krouse v. American Sterilizer, Co., 126 F.3d 494, 501 (3d Cir. 1997). This can be done by showing the inability of the plaintiff to establish one or more elements of his or her prima facie case. Id. Alternatively, summary judgment can be obtained even after a plaintiff establishes a prima facie case if the employer offers a legitimate non-retaliatory reason for the action and the plaintiff is not able to show that a reasonable jury could conclude that the justification is a pretext for retaliation. Id.

In the present case, defendant concedes that the first two elements of a prima

10

facie case have been established.  (Rec. Doc. No. 21, at 7).  Indeed, the plaintiff's previous lawsuit does constitute a protected employee activity.  Furthermore, the termination of her employment with EMS and her non-selection for numerous positions constitute adverse employment action.  It appears that the only dispute is whether a casual link exists between the protected activity and the adverse action.

Prior to discussing whether a prima facie causal connection exists, we believe it is necessary to first discuss how such a connection might be shown.  Aside from direct evidence of a causal connection, such as an employer's oral or written statements, certain circumstantial evidence can help a plaintiff to establish a prima facie case.  Temporal proximity between the protected activity and the adverse employment action is a common type of such circumstantial evidence.  Still, the Third Circuit has held that absent "unusually suggestive facts," temporal proximity is not enough on its own to establish a prima facie causal connection.  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d. Cir. 1989), abrogated on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405 (2006).

Additionally, although the Third Circuit has noted temporal proximity is not enough on its own to establish a prima facie case, a pattern of antagonism in the intervening period can be sufficient to establish a prima facie causal connection.

11

Robinson v. SEPTA, 982 F.2d 892, 894-95 (3d Cir. 1993).  Finally, we note that the Third Circuit has stated that there is virtually no limit to the type of circumstantial evidence that be considered when determining whether a causal connection exists.  Id. at 281.

Now, we will examine both the termination of plaintiff's employment with EMS and the denial of her applications for various positions, to determine whether plaintiff has established a prima facie causal connection between the protected activity and the adverse employment action.

A. Termination of Plaintiff's Employment with EMS

The facts show that plaintiff filed her EEOC complaint on February 22, 2000.  She filed her complaint in the United States District Court for the Middle District of Pennsylvania on October 30, 2001.  This case was eventually settled in October, 2002.  During this time, plaintiff was employed with EMS, holding both the ten hour per week safety officer position and completing other assignments which made her employment full-time.  On May 6, 2002, plaintiff received notice that her contract would be renewed only from July 1, 2002 until September 30, 2002.  Then, in October, 2002, plaintiff began to perform only the safety officer part-time position.   (Rec. Doc. No. 19, ¶ 90.)  Finally, on June 30, 2003, her

employment as safety officer was terminated.

The first issue we must consider is whether temporal proximity between the protected activity and the adverse employment action exists.  As a preliminary matter, we note that plaintiff was performing a protected activity throughout the entire duration of her initial lawsuit, which occurred up until the settlement in October, 2002.  Gallimore-Wright v. Long Island R. Co., 354 F.Supp.2d 478, 489-90 (S.D.N.Y 2005) (finding that maintenance of an action until settled is protected activity).  Additionally, the first instance of adverse employment action occurred on May 6, 2002, when plaintiff received notice that her contract would only be renewed for three months rather than the typical one-year time period.  Thus, the adverse employment action occurred during the course of her protected activity.

Still, as we have already discussed, absent "unusually suggestive facts," temporal proximity on its own cannot be sufficient to establish a causal connection. Robinson, 120 F.3d at 1302.  Although the adverse employment action occurred during the course of plaintiff's protected activity, we do not find that this creates the "unusually suggestive facts" sufficient to establish a causal connection on its own.  As the court discussed in Gallimore-Wright, despite the adverse employment action occurring during the course of plaintiff's protected activity, only adverse employment action occurring in close proximity to the commencement of the

protected activity (i.e. filing the complaint) will be sufficient on its own to establish a causal connection.  354 F.Supp.2d at 490.  This is because the filing of a civil complaint is much more likely to cause retaliation than simply maintaining or settling a cause of action.  Id.  Still, this is not to say that we will not consider the temporal proximity that occurred in the instant case as evidence of a causal connection, just simply that it is not sufficient on its own to establish a prima facie causal connection and avoid summary judgment.

Additionally, plaintiff argues that defendant's reasons for terminating plaintiff's employment give rise to an inference of causal connection.  We reiterate that after the plaintiff has established a prima facie case of retaliation, the burden shifts to defendant to offer a legitimate, non-discriminatory reason for its conduct.  Then, the burden shifts back to plaintiff to show that the reason is a pretext for retaliation.  Although we have yet to rule that plaintiff has established a prima facie case, we believe that arguments that a defendant's justifications are pretextual can also constitute evidence of a causal connection used to establish a prima facie case.  Farrell, 206 F.3d at 286 (noting that "nothing requires us to ration evidence between one stage or the other."); Weston v. Pennsylvania, 251 F.3d 420, 432 (3d Cir. 2001) (commenting that "pretext evidence can be relevant to causation."); Parker v. Philadelphia Newspapers, Inc., 322 F.Supp.2d 624, 633 (E.D.Pa. 2004)

14

(Robreno, J.) (noting that evidence of pretext can be "germane to the issue of causation and, therefore, may be seized upon by plaintiff in support of her prima facie case."). To establish that a justification is pretextual, a plaintiff may point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) (internal quotations omitted). When considering whether an employer's justification is pretextual, "the question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1999) (quoting Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir.1996)) (alteration in original).

As to the reduction of plaintiff's employment to only the safety officer position, defendant alleges that this was done because plaintiff's other assignments either lost funding or had been completed. Plaintiff, on the other hand, alleges that funding continued to exist because the defendant hired another individual to work in the same lab where plaintiff had been working. We find that the fact that defendant hired another individual to work in the same lab where plaintiff had been working does not create any inconsistency in the defendant's justification. There

15

are no facts before us to show that the new hire performed the same jobs that

plaintiff performed.  Thus, the lab could have lacked funding for plaintiff's

position, but still had funding to hire an individual for a different position.

As to the termination of plaintiff's employment as safety officer, defendant

alleges that it terminated plaintiff's employment as the safety officer because the

defendant decided it was not advisable for the safety officer's duties to be held by

an individual who was not a full-time employee of EMS, after an accident occurred

at EMS when plaintiff was not working.  Plaintiff, on the other hand, alleges that

there was no requirement that the safety officer serve as an emergency responder or

be on-call at all times.  Instead, the duty of the safety officer is to receive reports of

accidents or incidents and then investigate them.  Thus, plaintiff's argument is

essentially that it does not make sense to require the safety officer to be a full-time

employee because there is no real reason to do so.  Plaintiff argues that a part-time

safety officer could actually do a better job because she would have fewer

distractions and presumably be better suited to devote attention to safety issues.

Again, we find no inconsistency with the justification offered by defendant.

Despite plaintiff's argument that the safety officer's duties do not include being

on-call to respond to accidents, it certainly does not hurt to have the safety officer

arrive soon after an accident occurs.  Common sense dictates that the more quickly

a safety officer responds, the more effective the investigation into the accident would be.  Furthermore, a full-time employee is more likely to be working during an accident than a part-time employee and can more quickly respond.  Thus, with the evidence before the court, we find that a reasonable jury could not conclude that defendant's justification for terminating plaintiff as safety officer is a pretext for discrimination.

Finally, we note that we have not been directed to any other evidence that could be used to infer causality with respect to plaintiff's termination of employment at EMS.  Having found that plaintiff has not produced sufficient evidence to establish a prima facie causal connection, we conclude as a matter of law that a reasonable jury could not conclude that a causal connection exists between plaintiff's protected activity and defendant's adverse employment action and that summary judgment for defendant on this issue is appropriate.

B. Non-Selection for Various Positions

The facts show that plaintiff's applications were denied for thirty-two different positions throughout the University after her employment with EMS ended.  Yet, we reiterate that plaintiff has abandoned her challenges to all but

fourteen of these positions.  Therefore, we will only address the fourteen positions at issue.

As to Position Nos. 6, 15, 21, and 25, the defendant alleges that the decision not to hire plaintiff was made by a single decisionmaker and that the decisionmaker in each instance was unaware of plaintiff's previous lawsuit.  In each instance, defendant cites to an affidavit from the decisionmaker which states that he or she was unaware of plaintiff's protected activity.  Plaintiff has not offered any evidence to dispute that this is the case.  We believe that knowledge of the protected activity by the decisionmaker is a necessary component of a causal connection and the burden of proof lies with the plaintiff.  See Krause, 126 F.3d at 505 (discussing lack of evidence that decisionmaker had knowledge of plaintiff's protected activity).  Here, plaintiff has not produced any evidence to establish knowledge.  Furthermore, although not even necessary due to the lack of evidence provided by plaintiff, defendant has provided undisputed evidence that each of the decisionmakers was unaware of plaintiff's previous lawsuit.  Therefore, we will grant summary judgment for defendant as to these positions.

Similarly, as to Position No. 16, the defendant alleges that the decision not to hire plaintiff was made by a selection committee and that the chair of the committee was not aware of plaintiff's previous lawsuit.  Again, the defendant

cites to an affidavit from the chair of the committee.  Although this does not

preclude the possibility that another individual on the chair was aware of plaintiff's

protected activity, we reiterate that the burden of proving this issue lies with the

plaintiff.  Plaintiff has not brought forth any evidence that another individual on

the committee was aware of the previous lawsuit.  Thus, we find summary

judgment to be appropriate as to this position as well.

As to Position Nos. 2, 22, 29, and 31, plaintiff alleges that they were

withdrawn prior to being filled.  Defendant does not dispute that this is the case.

While we believe that withdrawing a position simply to prevent plaintiff from

applying would constitute unlawful retaliation under Title VII, there is simply no

evidence that this is the case.  There are many reasons to withdraw a position and

plaintiff has not pointed to any evidence sufficient to create an inference of

causation between the withdrawal of the position and her protected activity.

Therefore, we will grant summary judgment for defendant as to these four

positions.

As to Position Nos. 1, 5, and 11, defendant alleges that it has been unable to

identify the position based on the information provided by the plaintiff.  Similarly,

as to Position No. 13, defendant alleges that its records indicate that the job posting

does not exist.  Plaintiff counters that as to Position No. 1, plaintiff has a

confirmation email received by plaintiff after the application was submitted.

Similarly, as to Position Nos. 5, 11, and 13, plaintiff does not have a confirmation

email but nevertheless alleges in her affidavit that she remembers applying for the

positions.  Thus, there clearly appears to be a dispute as to whether these positions

existed, and we will draw the inference for the purposes of this motion that they

did in fact exist and that plaintiff applied for them.  Nevertheless, even if these

positions did exist and plaintiff was in fact denied for them, plaintiff again has not

pointed to any evidence to establish a prima facie causal connection between her

protected activity and her denial for the positions.  Plaintiff alleges that she applied

for Position No. 1 on December 9, 2002, Position No. 5 on December 27, 2002,

Position No. 11 on February 24, 2003, and Position No. 13 on March 13, 2003.  As

we have already discussed, plaintiff was performing a protected activity throughout

the entire duration of her initial lawsuit, which occurred up until the settlement in

October, 2002.  Thus, the first denial here occurred at least one month after the

protected activity ended.  Again, we reiterate that the Third Circuit has ruled that

absent "unusually suggestive facts," temporal proximity is not enough on its own

to establish a prima facie causal connection.  Robinson v. City of Pittsburgh, 120

F.3d at 1302.  All the evidence we have here is temporal proximity, and a one

month gap (and even longer for Position Nos. 5, 11, and 13) between settlement of

the previous cause of action (not the filing of the complaint) and the denial for

Position No. 1 does not create "unusually suggestive facts."  Therefore, we will

grant summary judgment for defendant as to these positions.

Finally, as to Position Nos. 20 and 26, there is some confusion about

whether these positions may in fact be the same.  Defendant alleges that Position

No. 20 was withdrawn and reposted as Position No. 26.  Then, it alleges that the

decisionmaker for Position No. 26 was unaware of plaintiff's previous lawsuit and

provides an affidavit from the decisionmaker to support this statement.  Plaintiff,

on the other hand, alleges that Position No. 20 was not withdrawn and reposted.

Instead, she alleges she applied for position No. 20 on April 2, 2003, had an

interview on April 12, 2003, and then received an email on May 2, 2003 stating

that another individual had been hired.  Furthermore, this email predated the date

of the reposting.  Even drawing the inference that Position No. 20 was filled rather

than reposted as Position 26, plaintiff faces the same evidentiary problem as she

has with many of the other positions.  The time period between the end of her

previous cause of action in October, 2002 and the denial for Position No. 20 on

May 2, 2003 is simply too lengthy to infer causation on its own.  Again, plaintiff

has not pointed to any other evidence that suggests a causal connection.  Therefore,

we will grant summary judgment for defendant as to this position.[2]


## CONCLUSION:

We find that plaintiff has been unable to set forth any evidence sufficient to

establish a prima facie case of retaliation under Title VII for either her termination

with EMS or her failure to obtain any of the fourteen positions in question.

Therefore, we find that a reasonable jury could not conclude that a causal

connection exists between plaintiff's protected activity and the adverse

employment action taken against her,  and will grant summary judgment for the

defendant.


            s/ James F. McClure, Jr.
            JAMES F. McCLURE, JR.
            United States District Judge
    IN THE UNITED STATES DISTRICT COURT
    FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


TERESA ANN CARMODY,          :
                             :
            Plaintiff,       :          No. 4:05-CV-1645

---

[2]As to Position No. 26, because plaintiff contends Position No. 20 was filled
prior to the position being reposted as Position No. 26 and because this would be
the fifteenth position and plaintiff has explicitly stated that she is only challenging
fourteen positions, it does not appear that she applied for or is challenging Position
No. 26.

|                              |   |                   |
|------------------------------|---|-------------------|
|                              | : |                   |
| v.                           | : | (Judge McClure)   |
|                              | : |                   |
| THE PENNSYLVANIA STATE       | : |                   |
| UNIVERSITY,                  | : |                   |
|                              | : |                   |
|              Defendant.      | : |                   |

# O R D E R

April 9, 2007

In accordance with the accompanying Memorandum, **IT IS HEREBY**

**ORDERED THAT:**

      1.    Defendant's motion for summary judgment is GRANTED.

          (Rec. Doc. No. 18.)

      2.    Final judgment is entered in favor of defendant and against

          plaintiff.

      3.    The clerk is directed to close the case file.

                                                      ___ s/ James F. McClure, Jr._____
                                                        JAMES F. McCLURE, JR.
                                                        United States District Judge